**DOCKET NO. 20-12148-AA**
IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

VIVIANNE JADE WASHINGTON,

*Appellant*,

vs.

Hugh Howard, in his individual capacity,

*Appellee*.

_____

**BRIEF OF APPELLEE HUGH HOWARD**
_____

On Appeal from United States District Court
For the Northern District of Georgia
Civil Action File No. 3:18-cv-0086-TCB

_____

Timothy J. Buckley III
Georgia State Bar No. 092913
tbuckley@bchlawpc.com
Taylor W. Hensel
Georgia State Bar No. 572754
thensel@bchlawpc.com
**BUCKLEY CHRISTOPHER, P.C.**
2970 Clairmont Road NE, Suite 650
Atlanta, Georgia 30329

**Docket No. 20-12148-AA**

<u>VIVIANNE WASHINGTON v. HUGH HOWARD, Individually</u>

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Counsel for Appellee Hugh Howard (hereafter "Lt. Howard" or "Appellee") certifies that the following persons and corporations have an interest in the outcome of this case.

1.     Batten, Timothy C., United States District Judge

2.     Buckley, Timothy J. III, attorney for Appellee

3.     Buckley Christopher, P.C. attorneys for Appellee

4.     Filipovits, Jeffrey, attorney for Appellant

5.     Filipovits Law, P.C., attorneys for Appellant

6.     Hensel, Taylor W., attorney for Appellee

7.     Hickey ,Jennifer, attorney for Appellant

8.     Howard, Hugh, Appellee

9.     Spears & Filipovits, LLC, attorneys for Appellant

10.    Washington, Vivianne Jade, Appellant ("Washington")

No publicly traded company or corporation has an interest in the outcome of this appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Lt. Howard does not request oral argument in this case as the issues raised in this appeal can be appropriately decided on the basis of written briefs. However, if the Court deems oral arguments necessary to decide the issue in this appeal, Lt. Howard requests an opportunity to be heard.

# TABLE OF CONTENTS

**Certificate of Interested Persons and Corporate Disclosure Statement**........C-1

**Statement Regarding Oral Argument**....................................................................i

**Table of Authorities** .................................................................................... iii

**Statement of Jurisdiction** ...............................................................................1

**Statement of the Issue** ....................................................................................2

**Statement of the Case and Facts**......................................................................3

   I. Statement of the Case ...............................................................................3

   II. Statement of Facts .................................................................................3

   III. Standard of Review ..............................................................................9

**Summary of the Argument** ..............................................................................9

**Argument and Citation of Authority** ............................................................10

   I. Howard is entitled to qualified immunity as to federal law claims.................10

     *A. Washington's testimony that she told Howard she knew the participants in the Dow crime is not contradicted* ..............................................................12

     *B. The confidential informant's tip is not at issue as Washington admits there was probable cause to effect her arrest*……………………………………..13

     *C. Heard's alleged recantation of his identification of Washington did not extinguish probable cause*……………..……………………………………..14

   I. The length of Washington's detention based on a valid arrest warrant cannot support any constitutional claim....................................................................16

**Conclusion**....................................................................................................17

**Certificate of Compliance**.............................................................................19

**Certificate of Service**.................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**CASES**

<u>Bailey v. Bd. Of Comm'rs, Alachua Cnty.</u>, 956 F.2d 1112 (11th Cir. 1992) ... 11-12

<u>Baker v. McCollan</u>, 443 U.S. 137 (1979) .........................................................16

<u>Banks v. Bostic</u>, 2018 WL 1158306 (11th Cir. 2018) ..................................... 15-16

<u>Brown v. Huntsville</u>, 608 F.3d 724 (11th Cir. 2010)........................................11

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) .................................................9

<u>Chapman v. City of Atlanta</u>, 192 Fed.Appx. 922 (11th Cir. 2006) ........................17

<u>Gates v. Khokhar</u>, 884 F.3d 1290 (11th Cir.1986) ...........................................10, 11

<u>Hunter v. Bryant</u>, 502 U.S. 224 (1991)........................................................ 15-16

<u>Saucier v. Katz</u>, 533 U.S. 194 (2001) ...........................................................10

<u>Scott v. Harris</u>, 550 U.S. 372 (2007) ......................................................... 12-13

<u>United States v. Pantoja-Soto</u>, 739 F.2d 1520 (11th Cir. 1986).............................11

<u>Waters v. Miller</u>, 564 F.3d 1355 (11th Cir. 2009) ..............................................9

**STATUTES**

28 U.S.C. § 1331 .......................................................................................1

28 U.S.C. § 1367 .......................................................................................1

42 U.S.C. § 1983 .......................................................................................1

## STATEMENT OF JURISDICTION

Pursuant to Fed. R. App. P. 28 and 11th Cir. R. 28-1(g), the District Court had subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1367 and 42 U.S.C. § 1983.  The District Court entered judgment granting Howard's Motion for Summary Judgment on May 8, 2020.  Doc. 67. Washington filed a Notice of Appeal on June 8, 2020, pursuant to Fed. R. App. P. 4(a)(1)(A). Doc. 71.

## **STATEMENT OF THE ISSUES**

Does a deputy have a clearly established duty to exhaust all means to exculpate a suspect where the suspect was properly and legally arrested, admitted to being involved with the alleged crime and knowing the participants in the crime, failed a polygraph examination related to the crime within the span of approximately four and a half hours after the suspect's arrest, and was immediately released when the facts became clear that the suspect was not involved in the crime?

## STATEMENT OF THE CASE AND FACTS

### I. Statement of the Case

Washington filed this suit for damages under 42 § 1983 for alleged violation of her Fourth Amendment rights and for violation of Georgia law. Doc. 1, p. 1. Washington alleged she was arrested based upon a facially invalid warrant without any investigation or probable case. Id. at p. 2. Washington also alleged she was imprisoned, denied contact with the outside world, and interrogated to extract a confession. Id. Lt. Howard, as set forth below, show that probable cause existed to arrest Washington, that Washington confessed to being a party to a crime at least twice, and that she was immediately released from custody when the facts became clear that she was not involved in the underlying crime.

### II. Statement of Facts

In August 2016, Sgt. Jason Durand ("Durand") with the Meriwether County Sheriff's Office was assigned to investigate a home invasion where an elderly woman, now known to be Ms. Dorothy Dow, the proprietor of a Meriwether County blueberry farm, had been set on fire after a home invasion and burglary (hereinafter also referred to as "the Dow crime"). Howard depo., p. 13, ll. 8-18. Durand contacted his Lieutenant, Appellee Howard, and asked Howard to apply for a search warrant for Ms. Dow's residence. Howard depo., p. 16, ll. 15-24. That warrant was presented to Judge Shirlene (neé Brown) Lowery (hereinafter

3

"Judge Lowery") in person by Howard; Judge Lowery confirmed probable cause and issued the search warrant. Id. at p. 16, l. 25-p. 16, l. 9. Howard then met the Georgia Bureau of Investigations ("GBI") crime scene investigators at the courthouse and travelled with them to the scene where Durand was waiting. Id. at p. 18, ll. 23-25.

While the GBI and Durand secured and processed the crime scene, Howard went back to the sheriff's office to interview witnesses. Id. at p. 22, ll. 1-3. During the investigation, Howard received a phone call from an employee of Ms. Dow's farm, Leonard Buchanan, who encouraged Howard to interview Cortavious Heard ("Heard"), another employee of Ms. Dow, about the Dow crime. Id. at p. 26, ll. 10-16. Heard was taken to the jail to be further questioned regarding the Dow crime. Id. at 22-25.

At the jail, Heard was interviewed and said it was Justin Grady ("Grady"), "a butch African American female in a black hat," and an unidentified black male who conducted the home invasion with him. Id. at p. 37, ll. 13-24. The investigative team, including Howard and Durand, then spoke with numerous agencies regarding the evidence provided about Heard and Grady. Id. at p. 41, ll. 7-13. While Howard was questioning Heard, Lt. Chris Warden, the narcotics officer for the sheriff's office, received a phone call from Victor McPhie ("McPhie"), a narcotics officer with the Newnan Police Department in Newnan,

4

Georgia, who relayed he had information from his confidential informant ("CI") that included a picture of a woman named Vivienne Washington who was involved in the Dow crime.  Id. at 17-23.

Howard received the photograph from Warden, brought it to Heard, and asked if it was anyone he recognized.  Id. at p. 42, ll. 1-3.  Heard said that the woman in the photograph, who we now know was Washington, was with him during the Dow crime and that she was wearing the same black hat he described earlier.  Id. at 3-6. After that statement, Howard learned from McPhie that the woman in the photograph was Washington, that she worked at a pizza place in Newnan, and that she went to high school with Angel Harmon and Mina Ellery— the two females who have now been convicted of participating in the Dow crime. Id. at p. 42, l. 22-p. 43, l. 3.

Based on this information, Howard spoke with Durand and then went through the process of obtaining an arrest warrant for Plaintiff, which Durand was to present to Judge Lowery.  Durand depo., p. 21, ll. 3-11.  The arrest warrant was executed by Judge Lowery.  See Arrest Warrant, included in Certified Sheriff's Office records, at Doc. 54-3.

In the late afternoon of August 8, 2016, Newnan Police arrived at Washington's place of employment, Pie Five Pizza.  Plaintiff's Depo., p. 15, l. 23- p. 16, l. 5; p. 17, ll. 5-8.  Washington was booked at 6:33 p.m.  See Booking

Report, Doc. 54-3. Before her booking, Lt. Howard offered Washington a polygraph test. Howard depo., p. 49, ll. 18-20. Washington alleges that she was then walked by Heard, who was housed in a cell with Justin Grady, another suspect in the Dow crime. Doc. 1, ¶ 33. Washington also alleged that both Heard and Grady informed Lt. Howard that Washington was not the "correct girl" involved in the Dow crime. Id. at ¶ 34-35. However, at deposition, Washington testified she was taken past Heard's cell and Heard *alone* was asked if she was a person involved in the crime on the farm. Washington depo. at p. 28, ll. 12-20 (emphasis added). Washington cannot recall what Heard was wearing and had never seen him before in her "entire life" but is sure Heard was housed in a cell with an older man she could not identify. Id. at p. 29, ll. 2-12.

Contrary to Washington's memory, Heard was housed alone at the jail in an observation/isolation cell. Howard depo., p. 46, ll. 22-25; p. 47, ll. 14-15; Doc. 54-3, Inmate Activity Report of Heard (showing Heard was housed in Isolation Cell 2 from 8/8/16 until 8/10/16). Grady, meanwhile, was housed in Booking. Id., Inmate Activity Report of Grady (showing Grady was housed in either Booking Cell 1, 2, or General Population from 8/8/16 until his release to the Department of Corrections). Heard positively identified Washington in the Dow crime by saying "that is the bitch I told you about" when Washington was walked by his observation cell. Howard depo., p. 49, ll. 1-6.

6

Washington was booked on an investigative hold. Id. at. p. 80, ll. 4-8. Because of that hold, she would not be allowed phone calls, visitors, or interactions with other detainees. Id. at ll. 9-13. The investigative hold is limited to 72 hours, after which Washington would be released. Id. at p. 57, ll. 8-12; p. 80, ll. 4-24.

Within the hour after being booked, Washington was questioned by Howard. Id. at p. 31, ll. 2-5.[1] During that questioning, Washington was shown photographs of Heard and the other persons believed to be involved in the Dow crime. Howard depo. at p. 31, ll. 2-11. Washington admitted that she was related to the suspects during that conversation. Washington depo. at p. 32, ll. 13-19. Washington was not coerced in any way to say that she knew Heard and the other suspected assailants involved in the Dow crime. Id. at p. 33, ll. 7-9. After that untruthful confession, Washington was driven to LaGrange, Georgia, for a polygraph test. Id. at ll. 16-20.

In LaGrange, Washington was met by a polygrapher (not Howard or Durand), hooked up to a "machine," told instructions, and felt generally

---

[1] This interview actually likely took place within minutes of Washington's booking. Washington was booked at 6:33 p.m. See booking report. Washington believes it was about an hour before she was taken to LaGrange for a polygraph test. Washington depo., p. 33, ll. 12-20. At 9:17 p.m., Washington was in LaGrange, Georgia, and signing documents to take a polygraph test. See Polygraph Documents. Washington also, erroneously, claims that within that time period, she was alone in her cell for "a couple of hours." Washington depo., p. 32, ll. 1-3. Obviously, Washington remembers her time in jail quite differently than the reality of the situation.

comfortable.  Id. at p. 35, l. 17- p. 36, l. 13.  Washington failed the polygraph test.

See Polygraph Documents, Ex. 1. Then, after already confessing that she knew

Heard and other suspected assailants, Washington **_admitted_** to being involved in

the Dow crime.  Id. at p. 36, ll. 14-15; Doc. 54-4, Polygraph Video of Washington,

2:26 ("I was there.").   Washington then began making up details about her

involvement and relaying them to Howard.  Washington depo. at ll. 24-25.  She

told him she got into a car with three strange men and met up at the park with the

other Dow assailants.  Id. at p. 37, ll. 1-2, Ex. 2 at 5:20.

Washington was not actually involved in the Dow crime.  Washington

testified that *she believes Howard believed her story up until he realized she was

lying during their conversation after the polygraph*.  Id. at p. 37, ll. 3-10 (emphasis

added).   Based on the realization that Washington's version of the facts were

inconsistent with other evidence, Howard interviewed Heard again who confessed

he lied about Washington being involved.  Howard depo., p. 68, l. 20-p. 69, l. 3.

Because he recanted his story, Heard was taken to the same polygrapher.  Id.

at p. 69, ll. 9-17.  Heard passed the polygraph (noting Washington was not

involved in the Dow crime), and Washington was immediately released by

contacting Judge Lowery, cancelling the warrant, and transporting Washington

back to her residence.  Id. at ll. 21-23; see also Heard Polygraph Results, Doc. 54-

3.   Heard was charged with making false statements because of his lie that Washington was involved in the Dow murder.  Id. at  p. 85, ll. 16-24.

**III.   Standard of Review**

This Honorable Court "review[s] the grant of summary judgment *de novo* considering all evidence and reasonable inferences drawn therefrom in the light most favorable to the non-movant."  Waters v. Miller, 564 F.3d 1355 (11th Cir. 2009).  Fed.R.Civ.P. 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The party who moves for summary judgment is responsible for identifying the portions of the record which they believe demonstrates the absence of a genuine issue of material fact. Id. This burden can be met if the moving party demonstrates that there is "an absence of evidence to support the non-moving party's case."  Id. at 325.  Once a movant meets their initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and point to "competent evidence designating specific facts showing that there is a genuine issue for trial."  Id.  As set forth below, Washington failed to provide that evidence.

**SUMMARY OF THE ARGUMENT**

Lr. Howard did everything in his power to assess and investigate

9

Washington's involvement in the Dow crime, given Washington's admissions to being involved therein and the positive identification of her as a co-conspirator. When finally provided with evidence that Washington was not involved, he released her immediately.

**ARGUMENT AND CITATION OF AUTHORITY**

**I.      Lt. Howard is shielded by qualified immunity from Washington's claims.**

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Gates v. Khokhar, 884 F.3d 1290, 1296 (11th Cir. 2018). "[Q]ualified immunity will be denied only if the preexisting law by case law or otherwise makes it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." Id. at 1297 (quotation and alteration omitted).

To overcome that immunity, Washington must show that (1) taken in the light most favorable to Washington, the facts show that the defendants' conduct violated a constitutional right, and (2) the right was clearly established at the time of the defendants' alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). Here, Washington alleges there was a violation of her Fourth Amendment right to be free from a malicious prosecution. Specifically,

10

Washington argues that the probable cause necessary to continue her detention at the Meriwether County Jail dissipated when Heard allegedly recanted his identification of Washington after Washington's first interview. App.Br., p. 17.

"Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." Gates, F.3d at 1298. "Even without actual probable cause, however, a police officer is entitled to qualified immunity if he had only 'arguable' probable cause to arrest the plaintiff." Id. "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed to arrest.'" Id. (alteration omitted). "Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." Brown v. City of Huntsville, 608 F.3d 724, 735 (11th Cir. 2010).

A deputy's decision to arrest a suspect may be objectively reasonable even though that deputy has not specifically discarded every possible non-criminal explanation for the conduct that forms the basis for his decision to arrest a suspect. See United States v. Pantoja–Soto, 739 F.2d 1520 (11th Cir.1984), cert. denied, 470 U.S. 1008, 105 S.Ct. 1369, 84 L.Ed.2d 389 (1985). Lt. Howard had no duty to

11

continue investigation to resolve all inferences and factual conclusions in favor of Washington.  Bailey v. Bd. of County Comm'rs, Alachua Cnty., Fla., 956 F.2d 1112, 1120 n.5 (11th Cir. 1992).

### a. Washington's testimony that she told Howard she knew the participants in the Dow crime is not contradicted.

Washington argues that she should have been released after Heard allegedly recanted his statement that Washington was a person involved in the Dow crime. App.Br.1, 12, 17.  At that time, however, she had already admitted to knowing the other participants in the crime.  See Order, Doc. 67, p. 4; see also Washington depo., p. 32, ll. 13-16.

Washington now argues that the videotaped recording of the first official interview should negate her own testimony, arguing that Scott v. Harris, 550 U.S. 372 (2007), requires the trial court, in deciding a motion for summary judgment to rely solely upon video evidence in deciding a factual issue.  App.Br., pp. 18-20. First, there were "substantially" different versions of events in the Scott case that required review of the video to determine the actual facts.  550 U.S. at 378.  Here, both Howard and Washington agree that there was some conversation within an hour of Washington's booking where she identified participants in the Dow crime as being known to her.  Washington depo., p. 31, l. 24-p. 32, l. 11.

Further, the video in Scott showed the entirety of the disputed facts necessary to decide summary judgment.  Here, there is no record evidence that the

seven (7) videos submitted by Washington constitute the entirety of the conversations had between Washington and Meriwether County Sheriff deputies. In fact, Washington's own testimony does not specifically state that she admitted to knowing the other participants in the Dow crime—instead, she just mentions that she had told Howard she knew them some time "before" her second interview and Howard responded by offering a polygraph test. Id. at 32, ll. 6-16. Because the video does not directly contradict Washington's own testimony, the district court was correct in relying upon that testimony.

**b. The confidential informant's tip is not at issue as Washington admits there was probable cause to effect her arrest.**

Washington argues in passing that the district court erred in finding that the confidential informant who sent the photograph of Washington to Newnan Officer McPhie did not establish probable cause. However, the issue on appeal is whether that probable cause continued, not whether it was established. In fact, Plaintiff abandoned her claims related to her initial arrest pursuant to warrant in the trial court. Doc. 57, p. 12 ("Given Heard's positive identification of Plaintiff's photograph, Plaintiff recognizes there was at least arguable probable cause for Plaintiff's initial arrest.").

**c. Heard's alleged recantation of his identification of Washington did not extinguish arguable probable cause.[2]**

Washington argues that probable cause existed to effect Washington's arrest but that probable cause was extinguished when Heard made an "in-person statement that [Washington] was not a participant." App.Br, p. 21. Heard's recantation, however, came *after* Washington was polygraphed and admitted she was involved in the Dow crime. Doc. 57-1, ¶¶ 44, 48. It is undisputed that until the moment Washington admitted to the crime but could not fabricate facts consistent with involvement in the Dow crime, Lt. Howard believed Washington was involved. Id. at ¶ 47. After Lt. Howard realized Plaintiff's inaccuracies, Lt. Howard interviewed Heard again, learned that Heard had lied about Washington's involvement, confirmed that with his own polygraph, and *immediately* released Plaintiff. Id. at ¶¶ 48-50. The time between Washington being booked at the jail and confessing after her polygraph was approximately three hours. Id. at ¶¶ 36-37.

---

[2] Washington also argues that the photograph of Washington received from the confidential informant may have been "blurry" or "poorly lit"; however, the record is clear that Heard was shown a photograph of Vivianne Washington and that Heard positively identified her as being involved in the Dow crime. Doc. 57-1, ¶¶ 14-16. Howard learned from McPhie that the woman in the photograph was Plaintiff, that she worked at a pizza place in Newnan, and that she went to high school with Angel Harmon and Mina Ellery—the two females who have now been convicted of participating in the Dow crime. Howard depo., p. 42, l. 22-p. 43, l. 3. It is axiomatic then that the person in the photograph was Washington since the informant had extensive, and correct, information about Washington to support it.

Heard's alleged statement "that's not her" as Washington was walked by Heard's cell also did nothing to establish Washington's innocence at the time.[3] As the trial court correctly held, "by the time Washington was walked past Heard, she had already confessed to knowing other suspected co-conspirators involved in the Dow crime. And the information from the confidential informant identified her as a potential co-conspirator." Order, p. 14.

This Court recently found in favor of a defendant law enforcement officer who sought an arrest warrant for the plaintiff based on the identification of plaintiff as the perpetrator of a burglary by the victim of the burglary. See Banks v. Bostic, No. 17–13986, 2018 WL 1158306, at *1 (11th Cir. Jan. 10, 2018). The charges against the plaintiff were later dismissed when it was determined she was not, in fact, the perpetrator. The plaintiff filed suit against the defendant law enforcement officer, alleging malicious prosecution in violation of her Fourth Amendment rights. However, the district court found that the defendant officer was entitled to qualified immunity; the Eleventh Circuit affirmed, stating, "Mistakes of the sort that seems to have occurred here are regrettable, but inevitable, and do not defeat qualified immunity. Rather, as the Supreme Court has emphasized, '[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause

---

[3] It is quite clear from the record that Heard did not make this statement. Washington says the statement was made by Heard who was housed in a cell with an older male. However, it is undisputed that Heard was alone in an isolation cell for the entirety of Washington's time at the jail. Doc. 57-1, ¶ 29.

is present are entitled to immunity.'" Id. at *2 (citing Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

The court further provided, "Under our case law, an eyewitness's identification of a perpetrator is ordinarily sufficient to establish probable cause for an arrest." Id. Similarly, in the present case, Lt. Heard reasonably concluded that probable cause was present based on Heard's initial identification and, therefore, is entitled to immunity. Heard's identification of Washington was sufficient to establish probable cause for an arrest. Probable cause was only extinguished when that eyewitness recanted his identification, and Washington was released.

## II. The length of Washington's detention based on a valid arrest warrant cannot support any constitutional claim.

Washington was released within twenty-five hours of her initial booking. See Booking Report. Washington does not attack the validity of the arrest warrant which precipitated Plaintiff's booking. Doc. 57, p. 12. Persons arrested pursuant to warrant and held for some period of days do not and cannot have a claim for constitutional deprivation based on that period of incarceration. Baker v. McCollan, 443 U.S. 137, 144-45, 99 S.Ct. 2689, 2694-95, 61 L.E.2d 433 (1979) (finding a 3-day deprivation of liberty resulting from mistaken identity did not give rise to a constitutional claim because the plaintiff was arrested and detained on a valid warrant).

16

In <u>Chapman v. City of Atlanta</u>, 192 Fed.Appx. 922 (11th Cir. 2006), Chapman brought a § 1983 claim against the City based upon a misidentification which led to her arrest and subsequent incarceration in the City Jail for eighteen hours until her release when it was determined she was not the suspect in the underlying crime. There, citing <u>Baker</u>, the Court held that "[b]ecause Chapman was arrested and held pursuant to a valid arrest warrant and because she was released within twenty four hours," her constitutional claims failed. <u>Id.</u> at 924. Here, the time of detention is similar to that in <u>Chapman</u> (twenty-five hours).

## **<u>CONCLUSION</u>**

Appellee Howard respectfully requests that this Court affirm the District Court's Order granting summary judgment to him for the reasons stated above.[4]

Respectfully submitted, this 30th day of September, 2020.

**{Signature on following page.}**

---

[4] Despite the language of Fed.R.App. 30(b)(1), Washington did not confer with Lt. Howard regarding providing a joint appendix for this appeal. As such, and because of the deficiency in same, Lt. Howard will file a supplemental appendix in accordance with 11th Cir.R. 30-1(b).

**BUCKLEY CHRISTOPHER, P.C.**

**/s/ Taylor W. Hensel**

TIMOTHY J. BUCKLEY III
Georgia State Bar No. 092913
TAYLOR W. HENSEL
Georgia State Bar No. 572754
Attorneys for Lt. Howard

2970 Clairmont Road
Suite 1010
Atlanta, GA 30329
(404) 633-9230
(404) 633-9640 (fax)
tbuckley@bchlawpc.com
thensel@bchlawpc.com

# CERTIFICATE OF COMPLIANCE
# WITH TYPE-VOLUME LIMITATION,
# TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because this brief contains 4,573 words, including the parts of the brief exempted by Fed.R.App.P. 32(f).

2. This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in Fourteen (14) point Times New Roman font.

Respectfully submitted, this 30th day of September, 2020.

**BUCKLEY CHRISTOPHER, P.C.**

**/s/ Taylor W. Hensel**

TIMOTHY J. BUCKLEY III
Georgia State Bar No. 092913
TAYLOR W. HENSEL
Georgia State Bar No. 572754
Attorneys for Lt. Howard

2970 Clairmont Road
Suite 650
Atlanta, GA 30329
(404) 633-9230
(404) 633-9640 (fax)
tbuckley@bchlawpc.com
thensel@bchlawpc.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2020, I electronically filed BRIEF OF APPELLEE HOWARD by using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record. I further certify that on September 30, 2020, seven (7) paper copies of the foregoing Brief of Appellee were mailed to the Clerk of Court by U.S. Priority Mail, proper postage paid.

**BUCKLEY CHRISTOPHER, P.C.**

**/s/ Taylor W. Hensel**

_____

TIMOTHY J. BUCKLEY III
Georgia State Bar No. 092913
TAYLOR W. HENSEL
Georgia State Bar No. 572754
Attorneys for Lt. Howard

2970 Clairmont Road
Suite 650
Atlanta, GA 30329
404-633-9230
tbuckley@bchlawpc.com
thensel@bchlawpc.com