No. 20-12148-AA

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

———————————

VIVIANNE JADE WASHINGTON

*Plaintiff/Appellant*,

v.

HUGH HOWARD,
in his individual capacity,

*Defendant/Appellee.*

———————————

Appeal From The United States District Court
For The Northern District Of Georgia
Case No. 3:18-cv-86-TCB

———————————

**APPELLANT'S REPLY BRIEF**

———————————

JEFF FILIPOVITS
Georgia Bar No. 825553
Spears & Filipovits, LLC
1126 Ponce de Leon Avenue
Atlanta, Georgia 30306
Phone: 678-237-9302
jeff@civil-rights.law

November 18, 2020

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1, the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and any other identifiable legal entities related to a party:

1. Batten, Timothy J., Sr.

2. Buckley, Timothy

3. Buckley Christopher, P.C.

4. Durand, Jason

5. Filipovits, Jeffrey

6. Filipovits Law, P.C.

7. Hensel, Taylor

8. Howard, Hugh

9. Hickey, Jennifer

10. Spears & Filipovits, LLC

11. Washington, Vivianne

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

This 18th day of November, 2020.

/s/Jeff Filipovits
Jeff Filipovits
Georgia Bar No. 825553

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement.................C-1

Table of Contents..................................................................................................i

Table of Citations.................................................................................................ii

Argument and Citation of Authority.......................................................................1

   I.  Howard had a constitutional obligation to
release Washington after Heard stated "that's
not her" and there was no other reliable
evidence connecting Washington to the crime....................................................1

     A. Officers have a duty to release an arrestee
upon learning of evidence which refutes the
existence of probable cause.............................................................................1

     B. Probable cause dissipated after Cortavious
Heard recanted his identification of Plaintiff.....................................................4

       1. Heard's stated that Washington was not a
participant in the crime after seeing her in-person...................................4

       2. There is a dispute of fact as to whether, and
when, Washington stated to Howard that she
knew the participants in the crime........................................................5

       3. The confidential informant's tip was not reliable
and its weight factors into the analysis of whether
probable cause dissipated...................................................................7

Conclusion.........................................................................................................8

Certificate of Compliance.....................................................................................9

Certificate of Service..........................................................................................10

# <u>TABLE OF CITATIONS</u>

*Cases*

*Baker v. McCollan*,
    443 U.S. 137 (1979)..................................................................................4

*Chapman v. City of Atlanta, Ga.*,
    192 F. App'x 922 (11th Cir. 2006)...........................................................4

*Barnett v. MacArthur*,
    956 F.3d 1291 (11th Cir. 2020).................................................................5

*United States v. Grubbs*,
    547 U.S. 90 (2006)....................................................................................5

<u>**ARGUMENT AND CITATION OF AUTHORITY**</u>

Probable cause for Vivianne Washington's arrest was based on a photographic identification of her by Cortavious Heard, another suspect in the crime. But after Heard saw Washington in-person, he said she wasn't one of the people who was at the scene of the crime. At that point, Howard had an obligation to release her.

**I.      HOWARD HAD A CONSTITUTIONAL OBLIGATION TO RELEASE WASHINGTON AFTER HEARD STATED "THAT'S NOT HER" AND THERE WAS NO OTHER RELIABLE EVIDENCE CONNECTING WASHINGTON TO THE CRIME**

***A.      Officers have a duty to release an arrestee upon learning of evidence which refutes the existence of probable cause***

Howard argues that because Washington was arrested based on a valid warrant, she cannot state a claim for malicious prosecution. In other words, Howard argues that no matter what exculpatory information an officer learns after an arrest, the officer has no duty to take any action and the arrestee can be held at least 24 hours. Defendant did not raise this issue in the district court.

In support, Defendant cites *Baker v. McCollan*, 443 U.S. 137 (1979). *Baker* was a Fourteenth Amendment case that was filed against a sheriff who failed to determine whether the plaintiff, who had been arrested based on a valid warrant, had been correctly identified by the arresting officers. The sheriff was not involved in the underlying investigation, seeking the warrant, or arresting the plaintiff. The

Court held that the sheriff did not violate the Fourteenth Amendment because the warrant application process provided the arrestee with due process.

This is not a Fourteenth Amendment case against a sheriff who is entitled to assume

But this a Fourth Amendment case against the officer who ordered another to procure the warrant for Plaintiff and continued to investigate the crime. During that investigation, he learned of exculpatory evidence which, a jury could find, conclusively rebutted his earlier probable cause determination. *Baker* has nothing to do with the claim raised here.

Likewise, *Chapman v. City of Atlanta, Ga.*, 192 F. App'x 922, 924 (11th Cir. 2006), has no bearing on this case. In *Chapman* this court affirmed the grant of summary judgment against an arrestee who was arrested based on mistaken identity. The arrestee matched most, but not all, of the identifying information contained in the warrant and this court held that the mistake in misidentifying her was reasonable. This case has no bearing on any of the issues raised here.

Lt. Howard's interpretation of *Baker* also conflicts with binding precedent from this Court which shows that an officer has a continued obligation to assess probable cause upon learning new information. While *Baker* stands for the proposition that, under the Fourteenth Amendment, a jail custodian has no ongoing duty to investigate a person is arrested based on a valid warrant. No one disputes

that here. But Baker does not sand for the proposition that an arresting officers may close their eyes to exculpatory evidence that come to light after an arrest is made. *See, e.g.*, *Barnett v. MacArthur*, 956 F.3d 1291, 1299 (11th Cir. 2020) ("Following a warrantless DUI arrest based on probable cause, officers do not have an affirmative Fourth Amendment duty to investigate or continually reassess whether the arrestee is or remains intoxicated while in custody. But where, as here, the officers seek and obtain information which shows beyond a reasonable doubt that the arrestee is not intoxicated—in other words, that probable cause to detain no longer exists—the Fourth Amendment requires that the arrestee be released."). This applies to arrests based on a warrant as well as warrantless arrests. "[P]robable cause may cease to exist after a warrant is issued . . . ." *Id.* at 1297 (quoting *United States v. Grubbs*, 547 U.S. 90, 95 n.2 (2006)). *See also* Appellant Br. at 14 (citing cases for the proposition that an officer has a duty to release a suspect upon the dissipation of probable cause); *Barnett*, 956 F.3d at 1297 (same).

Under Howard's interpretation of the law, an officer could knowingly allow a person who was proven innocent to remain incarcerated—apparently for at least 24 hours— simply because the arrest was valid at its inception. That interpretation strains credulity.

Finally, there should be no doubt that Howard had the authority to unilaterally release Washington from custody because that is exactly what he

3

ultimately did—though not without first continuing to jail, interrogating, lying to, polygraphing, and ultimately extracting a fanciful false confession from her.

### B. Probable cause dissipated after Cortavious Heard recanted his identification of Plaintiff

#### 1. Heard's stated that Washington was not a participant in the crime after seeing her in-person

Howard claims that "it is quite clear from the record" that Heard did *not* state "that's not her" when he saw Ms. Washington in person. *See* Appellee Br. at 15 n.3. But this is not the time for Howard to argue what the weight of the evidence shows. Ms. Washington testified that Heard stated "that's not her." *See* Doc. 52, Washington Dep. 29:2–10. That fact that must be assumed for the purposes of summary judgment.[1]

#### 2. There is a dispute of fact as to whether, and when, Washington stated to Howard that she knew the participants in the crime

After Washington's arrest, she spoke with Howard in an interrogation room.

---

[1] The argument Howard offers that this Court should disregard Washington's sworn testimony is unavailing. Howard argues that because Plaintiff stated it was undisputed that "Heard was housed alone at the jail . . ." that her testimony must be disregarded because she testified that she saw Heard in a cell with another inmate. *See* Appellee Br. at 15 n.3. First, the admission that Howard was "Housed alone at the jail in an observation/isolation cell" does nothing to undermine the central disputed fact: whether Howard stated "that's not her," or stated "that's the b****" when he saw Washington. Second, there is nothing Howard's statement of material fact that indicates that Heard was held alone for the duration of his entire time in the jail, and that there was no point during which another inmate was housed with Heard. Howard is parsing Washington's testimony and the materials from the district court in a way favorable to him, but that is not appropriate at summary judgment.

*See generally* Doc. 62, Washington Int. #1 at 1:00. That interrogation was recorded. *Id.* It begins with Howard reading Washington her Miranda rights. Washington, clearly afraid, quickly stated that she wished to speak to a lawyer, and Howard immediately terminated the interview. *Id. See also* Doc. 51, Howard Dep. 81:7–11.

After that interview—i.e., before any other communication with Washington—Howard walked Washington past Heard's holding cell. *See* Doc. 51, Howard Dep. 48:22–51:14.[2]

Washington then spent a few hours locked in a jail cell, before she ultimately re-initiated contact with Howard. Doc. 51, Howard Dep. 81:7–11. No witness has testified to any other conversation between the two.

Howard now asks this Court to find was a separate conversation with Washington where she was shown photographs of the other suspects and says that she knew them. He does not explain when this conversation happened, but it was apparently either before reading Washington a *Miranda* warning or after the invocation of counsel. Neither of those are tenable.

For this Court to find this fact to be undisputed, it would have to disbelieve

---

[2] The factual narrative in Washington's principal brief discusses Heard's recantation after it discusses the second interview with Washington. *See* Appellant Br. at 8–9. It is important to clarify that, based on Howard's testimony, he walked Washington past Heard's cell after the first interview, i.e., after Washington invoked her right to counsel and before any subsequent discussion with her.

the video evidence, and read Washington's unclear testimony in a way unfavorable to her while ignoring other plausible and interpretations. That is not appropriate at summary judgment.

Thus, this Court should find, for the purposes of summary judgment, that Washington did not state that she knew the other suspects of the crime before Heard recanted his original identification of Washington. This is also reinforced by Howard's testimony that, during Washington's first interview, he did not learn anything incriminating. *See* Doc. 51, Howard Dep. 56:3–15. Given the video evidence, Howard's testimony, and the equivocal and unspecific testimony from Ms. Washington, this Court should assume, for the purposes of summary judgment, that the video recording of Washington's first interview with Howard comprises all information Howard learned from her prior to the time Cortavious Heard stated that Washington was not involved in the crime.

        3.    <u>The confidential informant's tip was not reliable and its weight factors into the analysis of whether probable cause dissipated</u>

Howard argues that the confidential informant's tip is irrelevant to the probable cause analysis because Washington admits there was probable cause to support her initial arrest.

But for this Court to assess whether probable cause dissipated, it must assess all of the information known to Howard at the time of Heard's recantation. For

example, if Howard had other compelling evidence that Washington was involved in the crime, Heard's recantation would not cause the dissipation of probable cause. Or, if Howard had scant evidence and Heard's initial identification was the sine qua non of probable cause, then probable cause would have dissipated after Heard's recantation. The information (or lack thereof) from the confidential informant shows this is the latter. This discussion of this evidence is briefed fully in Washington's principal brief. *See* Appellant Br. at 20. Howard has not responded to any argument concerning the credibility of the confidential informant, but does argue that the information from the informant identified her as a "potential co-conspirator." Appellant Br. at 20. To be clear, the information from the informant was that Washington "involved in this," without further information as to what "involved" meant. Doc. 51, Howard Dep. 41:17–25.

<div align="center"><u>CONCLUSION</u></div>

The entire basis of probable cause for Plaintiff's arrest was an identification based on a photograph. Later, without any additional incriminating information, the person who made that identification recanted it. At that point, Ms. Washington should have been released rather than held and subjected to ongoing interrogation techniques. Ms. Washington—who Howard acknowledges was not involved in the crime[3]—came dangerously close to being prosecuted for it. She should have been

---

[3] *See* Appellee Br. at 8 ("Washington was not actually involved in the Dow crime.").

<div align="center">7</div>

released when Cortavious Heard saw her in person and said she was not involved. At that point, there was no arguable probable cause to continue her detention.

For the foregoing reasons, Ms. Washington requests this Court reverse the district court's grant of summary judgment and remand the case for further proceedings.

Submitted this 18th day of November, 2020.

<div style="margin-left:50%">

/s/Jeff Filipovits
Jeff Filipovits
Georgia Bar No. 825553

Spears & Filipovits, LLC
1126 Ponce de Leon Avenue
Atlanta, Georgia 30306
678.237.9302 (direct)
jeff@civil-rights.law

</div>

## <u>CERTIFICATE OF COMPLIANCE</u>

Undersigned counsel certifies that this document complies with the 6,500 word limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 1,860 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface in 14-point Times New Roman font. The brief was prepared using LibreOffice 6.4.7.2 and GNU Emacs 28.0.50.

This 18th day of November, 2020.

<div style="text-align: right">

<u>/s/Jeff Filipovits</u>
Jeff Filipovits
Georgia Bar No. 825553

</div>

Spears & Filipovits, LLC
1126 Ponce de Leon Avenue
Atlanta, Georgia 30306
678.237.9302 (direct)
jeff@civil-rights.law

## CERTIFICATE OF SERVICE

I certify that on this date I served the foregoing document by electronically filing with the CM/ECF system, which constitutes service upon all attorneys of record under 11th Cir. R. 25-3(a):

Timothy Buckley

Taylor Hensel

I also certify that I have dispatched seven copies of this brief to be delivered via FedEx to the Clerk's Office for delivery within 3 days.

This 18th day of November, 2020.

/s/Jeff Filipovits
Jeff Filipovits
Georgia Bar No. 825553

Spears & Filipovits, LLC
1126 Ponce de Leon Avenue
Atlanta, Georgia 30306
678.237.9302 (direct)
jeff@civil-rights.law